[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Sept. 8, 2009
THOMAS K. KAHN
CLERK

_____

No. 09-10309
Non-Argument Calendar
_____

Agency Nos. A098-649-739
A098-649-741

LOLA MENDEZ-DE VASQUEZ,
HEIDY XIOMARA VASQUEZ-MENDEZ,
XENIA MARIA VASQUEZ-MENDEZ,
MARLON LEONEL MENDEZ-CHACON,
YESSENIA LISSETH CHACON-MENDEZ,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(September 8, 2009)

Before BIRCH, BLACK and BARKETT, Circuit Judges.

PER CURIAM:

Petitioner Lola Mendez De Vasquez ("Lola") is the mother of petitioners Heidy Vasquez-Mendez ("Heidy") and Xenia Vasquez-Mendez ("Xenia"), and the aunt of petitioners Yessenia Chacon-Mendez ("Yessenia") and Marlon Mendez-Chacon ("Marlon") (collectively, "the Petitioners"). They seek review of a decision by the Board of Immigration Appeals ("BIA") denying their applications for asylum and withholding of removal under the Immigration and Nationality Act ("INA"). The Petitioners, natives and citizens of El Salvador, assert that they were persecuted by a criminal gang called the Mara Salvatrucha ("Maras"). According to the Petitioners, the BIA erroneously determined that they were not persecuted on account of either their political opinion or their membership in a particular social group. After careful review, we DENY the petition.

## I. BACKGROUND

In July 2005, the Petitioners each received a notice to appear before an immigration judge because they had allegedly entered the United States on 2 July 2005 without being admitted or paroled by an immigration officer, in violation of INA § 212(a)(6)(A)(i). The Petitioners conceded removability and individually applied for asylum and withholding of removal under the INA as well as protection under the United Nations Convention Against Torture ("CAT").

At a merits hearing, Lola testified that two members of the Maras gang

2

demanded that she let her eldest daughter, Heidy, join their gang. When Lola refused, they threatened to kill her family. Heidy, who was born in 1991, testified that she would walk away each time the Maras asked her to join them. On her way home from school one day, two Maras members grabbed and raped her. Heidy did not report the incident to anyone because the Maras had threatened to kill her and her family if she did. Yessenia, who was a year older than her cousin Heidy, testified that she lived approximately three hours away from Heidy. Yessenia stated that the Maras also repeatedly attempted to recruit her. After several encounters during which Yessenia rebuffed or ignored them, the Maras, holding a knife, threatened to rape or kill her and her family if she did not join them. During a fifth encounter, Yessinia told the Maras that she would not join them because "they were bad, they were diabolical, they did bad things, they were going to go to hell" whereas she believed in God and did not want to do such things. Administrative Record ("AR") at 297.

Although the IJ found that Lola, Heidy, and Yessenia were all credible witnesses, he determined that only Heidy had been persecuted by the Maras. Even if all the Petitioners could establish persecution, however, the IJ concluded that none of them were members of a particular social group that was cognizable under the INA. Nor had they shown that they were persecuted on account of their membership in a particular social group, or on account of their religion or political

3

opinion. Moreover, the Petitioners failed to demonstrate a well-founded fear of future persecution on account of a protected ground. The IJ ultimately denied asylum, withholding of removal, and CAT relief.

The BIA upheld the IJ's decision because "the alleged events do not rise to the level of past persecution on account of a protected ground." Id. at 2. Specifically, the BIA found that the Petitioners "have not reasonably shown that the gang members targeted them for harm on account of their political opinion or imputed a hostile political opinion to them." Id. The BIA also rejected the Petitioners' claim that they were persecuted on account of their membership in a particular social group. The BIA described their putative group as "young Salvadoran students who oppose gang values and activities, and the family members of such Salvadoran youth." Id. at 3. Under the BIA's precedent, though, this proposed group did not satisfy the requirements of social visibility and particularity. "However real the [Petitioners'] fear may be, their claimed particular social group is simply not cognizable under the Act." Id. Accordingly, because the Petitioners did not suffer abuse by gang members on account of a protected ground, the BIA concluded that the Petitioners were ineligible for asylum and withholding of removal. Additionally, the BIA sustained the IJ's denial of CAT relief, noting that the Petitioners did not challenge the IJ's decision on that basis.

In their petition, the Petitioners contend that the BIA erred in finding that

4

they were not persecuted on account of a protected ground. First, they assert that they suffered past persecution and fear future persecution based on their actual or imputed political opinion. That political opinion is evidenced by Yessina's criticism of the Maras as well as her and Heidy's refusal to join the Maras, which the Petitioners assert "was clearly an expression of an anti-crime opinion." Petitioners' Opening Brief at 32. Second, the Petitioners maintain that they were persecuted on account of their membership in a particular social group. According to the Petitioners, the BIA oversimplified their social group and failed to take into account the testimony of their expert witness that the Maras targeted poor girls who come from fatherless homes with no adult male protective figures. The fact that the Petitioners resisted recruitment and criticized the Maras further enhanced their chances of being targeted by the Maras. Based on these protected grounds, the Petitioners argue that they are entitled to asylum and withholding of removal under the INA.[1]

## II. DISCUSSION

We review only the BIA's decision, as the BIA issued its own opinion and did not expressly adopt the IJ's decision or reasoning. See Kueviakoe v. U.S. Att'y Gen., 567 F.3d 1301, 1304 (11th Cir. 2009) (per curiam). To the extent that

---

[1] As the Petitioners do not challenge the denial of CAT relief, they have abandoned this issue. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (per curiam).

the BIA's decision was based on a legal determination, review is de novo. See

Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1254 (11th Cir. 2006) (per curiam). The

BIA's factual findings are reviewed under the substantial evidence test, which

requires us to affirm the BIA's decision "if it is supported by reasonable,

substantial, and probative evidence on the record considered as a whole." Id. at

1254-55 (quotation marks and citation omitted). Moreover, all the evidence and

reasonable inferences from that evidence must be viewed in favor of the BIA's

decision. See id. at 1255. We will reverse a factual finding only if the record

compels it. See id.

An alien may qualify for asylum by presenting credible evidence showing

past persecution on account of a protected ground, or a well-founded fear of future

persecution based on that protected ground. See Sepulveda, 401 F.3d at 1230-31.

Protected grounds are race, religion, nationality, membership in a particular social

group, or political opinion. See id. at 1230; § 8 U.S.C. 1101(a)(42)(A). An alien

who is ineligible for asylum is generally precluded from obtaining withholding of

removal under the INA, which requires a more stringent standard of proof. See

Sepulveda, 401 F.3d at 1232-33.

A. Political Opinion

In order to establish persecution on account of political opinion, the alien

must show that he was persecuted because of his own actual or imputed political

6

opinion, not because of the persecutor's political motives. See INS v. Elias-Zacarias, 502 U.S. 478, 482, 112 S. Ct. 812, 816 (1992). The mere fact that a person resisted recruitment into a guerilla organization does not necessarily constitute persecution on account of one's political opinion. See id. at 481-82, 112 S. Ct. at 815-16. As the Supreme Court has noted, resistance can stem from a host of other reasons – "fear of combat, a desire to remain with one's family and friends, a desire to earn a better living in civilian life, to mention only a few." Id. at 482, 112 S. Ct. at 816 (finding that alien resisted forced recruitment by a guerilla group based on his fear of government retaliation, not his political opinion). Furthermore, private acts of violence, harassment due to a petitioner's failure to cooperate with guerillas, or criminal activity in general do not qualify as persecution based on a statutorily protected ground. See Ruiz, 440 F.3d at 1258.

Substantial evidence supports the BIA's finding in this case that the Petitioners were not persecuted by the Maras on account of their actual or imputed political opinion. According to the Petitioners' own testimony, the Maras were trying to recruit Heidy and Yessenia into their criminal gang and harassed them because they refused to join them. There is no record evidence that any of the Petitioners were politically active against gangs, possessed a political opinion, or had one imputed to them by the Maras gang members. See Matter of S-E-G-, 24 I. & N. Dec. 579, 589 (BIA 2008) (concluding that Salvadoran youths had failed to

7

show the Maras persecuted them on account of their political opinion because there was no evidence of the youths' political involvement or opinions).  Nor was there any evidence that the Petitioners' opposition to gang membership was fueled by political motives.  Yessenia told the Maras that she refused to join them because they were "bad" and did "bad things."  AR at 297.  Similarly, Lola and Heidy testified that they viewed the Maras as dangerous, abusive criminals.  Contrary to the Petitioners' assertion, their self-described "anti-crime opinion" does not constitute an actual or imputed political opinion under the INA.  Petitioners' Opening Brief at 32.  Although we find the Maras' rape of Heidy deplorable, the fact that she was the victim of criminal activity is likewise insufficient to establish persecution based on her political opinion.  See Ruiz, 440 F.3d at 1258.

In sum, the Maras' actions against the Petitioners were "consistent with acts of private violence" or the Petitioners' failure to cooperate with the Maras' demands to join their gang, and were not based on a political opinion that the Petitioners held or that the Maras imputed to them.  Id.  The evidence thus does not compel the conclusion that the Petitioners suffered past persecution, or have a well-founded fear of future persecution, on account of their political opinion.

B.  Membership in a Particular Social Group

To qualify as a "particular social group" under the INA, the group must "share a common, immutable characteristic . . . [that] is fundamental to [its

8

members'] individual identities or consciences." Castillo-Arias v. U.S. Att'y Gen., 446 F.3d 1190, 1196 (11th Cir. 2006) (quotation marks and citation omitted). Examples of a common, immutable characteristic include sex, color, kinship ties, or in certain circumstances "a shared past experience such as former military leadership or land ownership." Id. at 1193 (quotation marks and citation omitted). This common characteristic must be something other than the risk of being persecuted. See id. In Castillo-Arias, we concluded that noncriminal informants working against a Columbian drug cartel were not a particular social group under the INA because they were not socially visible, the group was too numerous and inchoate, and "their defining attribute is their persecution by the cartel" once their identities were revealed. Id. at 1197-98.

Applying this framework, we agree with the BIA that the Petitioners are not members of a particular social group that is cognizable under the INA. As stated in their appeal brief to the BIA, Heidy and Yessenia belong to a group consisting "of young Salvadoran students who expressly oppose gang practices and values and who wish to protect their family members against such practices." AR at 27. The remaining Petitioners constitute family members who purportedly face retribution by the Maras. The proposed group lacks particularity, however, because its members "make up a potentially large and diffuse segment of society." Matter of S-E-G-, 24 I. & N. at 585. The Petitioners attempt to delimit and define their

9

group by narrowing it to "poor girls who come from fatherless homes, with no adult male protective figures . . . who resist recruitment or criticize the Maras." Petitioners' Opening Brief at 41-42. The BIA rejected a nearly identical proposed group in S-E-G- comprised of "male children who lack stable families and meaningful adult protection, who are from middle and low income classes, who live in the territories controlled by the [Maras] gang, and who refuse recruitment." Matter of S-E-G-, 24 I. & N. at 585. The BIA reasoned that even if these factors made an individual an easier target for recruitment, there was no record evidence that the Maras limited their recruitment efforts to male children who fit the above description. See id. The same holds true for female children who fall into the category defined by the Petitioners. Additionally, the Petitioners' proposed group of family members, which would include parents, siblings, cousins, nieces, nephews, et. al., is too amorphous and inchoate to satisfy the particularity requirement. See id. (rejecting a female respondent's claim that she belonged to a group of family members of Salvadoran youth who had rebuked the Maras' recruitment efforts).

The Petitioners' purported group also fails the social visibility test. The putative members do not share a characteristic that would "generally be recognizable by others in the community." Id. at 586-87 (noting that although the applicants were victims of harassment, beatings, and threats from the Maras,

"[t]here is little in the background evidence of record to indicate that Salvadoran youth who are recruited by gangs but refuse to join (or their family members) would be 'perceived as a group' by society, or that these individuals suffer from a higher incidence of crime than the rest of the population"); see also Matter of E-A-G-, 24 I. & N. Dec. 591, 594 (BIA 2007) ("Persons who resist joining gangs have not been shown to be part of a socially visible group within Honduran society . . . ."). According to the Petitioners' witness on country conditions in El Salvador, the Maras have infiltrated the entire country. There is no persuasive evidence that the general society perceives poor Salvadoran females from fatherless homes, who expressly oppose gang practices, as any more vulnerable to persecution by the Maras than anyone else. As the BIA explained, "victims of gang violence come from all segments of society, and it is difficult to conclude that any 'group,' as actually perceived by the criminal gangs [or society], is much narrower than the general population of El Salvador." Matter of S-E-G-, 24 I. & N. at 588.

The Petitioners contend that their case is distinguishable from S-E-G- because there the applicants did not make anti-gang statements, whereas here Yessenia directly criticized the Maras. According to the Petitioners, the Maras are more inclined to punish those who expressly disagree with their group, thereby elevating Yessenia's (and her family members') risk of retaliation by the Maras. The BIA disposed of a similar argument in S-E-G-:

11

> The respondents assert that they have a specific reason (i.e., their refusal to join the gang) to fear that the [Maras] would subject them to more violence than the general population. We do not doubt, as the respondents' expert witness testified, that gangs such as the [Maras] retaliate against those who refuse to join their ranks. However, such gangs have directed harm against anyone and everyone perceived to have interfered with, or who might present a threat to, their criminal enterprises and territorial power. The respondents are therefore not in a substantially different situation from anyone who has crossed the gang, or who is perceived to be a threat to the gang's interests.

Id. at 587. Similarly, the evidence here does not compel us to conclude that the added element of someone who expressly criticizes the Maras makes them any more readily identifiable by society as a whole. As the Petitioners cannot satisfy the social visibility requirement, they do not qualify as a particular social group within the meaning of the INA. See id. at 588 (concluding that young Salvadorans who refuse for personal, religious, or moral reasons to join the Maras are not socially visible as a group and therefore do not constitute a particular social group under the INA).

The Petitioners also seek to differentiate their situation from that in E-A-G- on the grounds that the applicant there was not personally harmed or threatened by the Maras, whereas here the Maras raped Heidy. See Matter of E-A-G-, 24 I. & N. at 592. Whether or not the applicant suffered past persecution was not the dispositive factor in either E-A-G- or this case, however. In E-A-G-, the BIA acknowledged that the absence of past persecution was undisputed, but disagreed

with the IJ's determination that the applicant had established a well-founded fear of future persecution "on account of" either his membership in a particular social group or his political opinion. Id. at 593-97. Likewise, the dispositive factor here was the BIA's conclusion that the Maras did not target the Petitioners "on account of" their political opinion or their membership in a particular social group. AR at 2-3. In both cases, the applicants failed to establish that any alleged persecution was on account of a protected ground under the INA. We thus find no meaningful distinction between the BIA's precedent and the case before us.

Accordingly, we conclude that the Petitioners have failed to establish that they were persecuted or have a well-founded fear of persecution on account of their membership in a particular social group.

### III. CONCLUSION

Based on the foregoing reasons, the evidence does not compel us to conclude that the Petitioners are eligible for asylum. Because they cannot satisfy the less stringent standard for asylum, we also conclude that they are ineligible for withholding of removal under the INA. See Sepulveda, 401 F.3d at 1232-33. Accordingly, we DENY their petition for review.

**PETITION DENIED.**

13