**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0742n.06

**No. 09-4140**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Nov 29, 2010**
LEONARD GREEN, Clerk

ADEL BA-ALAWI,

      Petitioner,

v.

ERIC HOLDER, JR.,

      Respondent.

ON PETITION FOR REVIEW FROM THE BOARD OF IMMIGRATION APPEALS

_____ /

BEFORE:    BOGGS, COLE and CLAY, Circuit Judges.

**CLAY, Circuit Judge.**  Petitioner Adel Mohamed Ba-Alawi petitions for review of a decision of the Board of Immigration Appeals, denying his applications for withholding of removal under section 241(b)(3) of the Immigration and Nationality Act, 8 U.S.C. § 1231(b)(3), and, in the alternative, voluntary departure under section 240(B) of the Act, 8. U.S.C. §1229c. For the reasons set forth below, we **DENY** Ba-Alawi's petition for review.

**BACKGROUND**

Petitioner Adel Mohamed Ba-Alawi ("Ba-Alawi") is a native and citizen of Yemen, and a former soldier in the Yemeni Air Force. He and his wife entered the United States on December 22, 1998, on B-2 visas, as visitors for pleasure. Ba-Alawi testified before the immigration judge ("IJ")

that his intention, at the time of entry, was to return to Yemen after seeking medical treatment for his wife, who was suffering from complications related to the miscarriage of a pregnancy. Nonetheless, both he and his wife remained in the United States past the date authorized by their visas.

In January 2003, the Department of Homeland Security ("DHS") sent Ba-Alawi a Notice to Appear; on June 27, 2003, Ba-Alawi conceded removability and requested withholding of removal under the Immigration and Nationality Act ("INA") and, alternatively, voluntary departure. On January 7, 2008, the IJ denied his applications. He appealed to the Board of Immigration Appeals ("BIA"), which issued an order denying Petitioner's applications and entered a final removal order. On September 17, 2009, Petitioner filed a timely appeal to this Court, which has authority to review determinations of the BIA pursuant to 8 U.S.C. §1252.

At his immigration hearing, Ba-Alawi testified that, sometime between 1998 and 2001, he became involved in events stemming from an overture of marriage made by his brother-in-law to his sister.[1] Ba-Alawi testified that his brother-in-law, Labeeb, attempted to "force" a marriage upon his sister, which she resisted with Ba-Alawi's full support. This rejection was perceived as an offense against the "honor" of Labeeb's family. In order to restore honor, Labeeb then demanded that Ba-Alawi divorce his own wife; Ba-Alawi refused, and Labeeb threatened to kill both him and his wife.

Ba-Alawi testified that he believed that the government of Yemen would be unwilling or unable to protect him from the threat posed by Labeeb, both because Labeeb is a rich and powerful

---

[1]While this woman has no biological relation to Petitioner, Petitioner claims that she is considered his sister in Yemeni society by virtue of the two having shared the same wet-nurse. (Tr. at 48.)

man, and also because Ba-Alawi is a military deserter and has already fallen afoul of the Yemeni government.

## DISCUSSION

### I.     Standard of Review

This Court reviews questions of law *de novo*, with substantial deference given to the BIA's legal interpretation of the INA, which "will be upheld unless the interpretation is arbitrary, capricious, or manifestly contrary to the statute." *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007).

We review findings of fact by application of the substantial evidence standard, which requires that factual findings be supported by "reasonable, substantial, and probative evidence on the record considered as a whole." *Ramaj v. Gonzales*, 466 F.3d 520, 527 (6th Cir. 2006) (citing *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). Administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary. 8 U.S.C. § 242(b)(4)(B).

Because the BIA conducted a *de novo* review of the IJ's decision and issued a separate opinion, this Court reviews the BIA decision as the final agency determination. *Grijalva v. Gonzales*, 212 F. App'x 541, 547 (6th Cir. 2007) (citing *Zaitona v. INS*, 9 F.3d 432, 434 (6th Cir. 1993)); *Morgan*, 507 F.3d at 1057. Insofar as the BIA adopted its reasoning from the IJ's decision, this Court also reviews such reasoning. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009).

## II.     Withholding of Removal

To be eligible for withholding of removal, a petitioner must show that he is both a member of a particular social group, and that there is a "clear probability of persecution" if he is returned to his county. *INS v. Stevic*, 467 U.S. 407, 413 (1984); *see also* 8 U.S.C. § 1231(b)(3)(A).

Membership in a particular social group is demonstrated when a petitioner presents evidence sufficient to prove that he belongs to a group that has both "particularity" and "social visibility." *Matter of S-E-G-*, 24 I. & N. Dec. 579, 582 (B.I.A. 2008).

This Court has defined the essence of particularity as "whether the proposed group can accurately be described in a manner sufficiently distinct that the group would be recognized, in the society in question, as a discrete class of persons." *Al-Ghorbani v. Holder*, 585 F.3d 980, 994 (6th Cir. 2009) (internal citations and quotations omitted). We have also held that "generalized, sweeping classifications" of persons cannot meet the demands of "particularity." *Rreshpja v. Gonzales*, 420 F.3d 551, 555 (6th Cir. 2005). The BIA has defined "social visibility" as requiring that "the shared characteristic of the group should generally be recognizable by others in the community." *Matter of S-E-G-*, 24 I. & N. Dec. at 586.

Even if a social group possesses both social visibility and particularity, its primary defining characteristic cannot be persecution. *See Castellano-Chacon v. INS*, 341 F.3d 533, 548 (6th Cir. 2003) ("[S]ociety's reaction to a 'group' may provide evidence in a specific case that a particular group exists, as long as the reaction by persecutors to members of a particular social group is not the touchstone defining the group.").

A clear probability of persecution exists when "it is more likely than not that the alien would be subject to persecution." *Stevic*, 467 U.S. at 424. It requires enough evidence "to compel a finding that [a petitioner] would, more likely than not, be persecuted on the basis of [membership in the social group]." *Castellano-Chacon*, 341 F.3d at 545.

In this case, Ba-Alawi contends that he is a member of a particular social group that he defines as "persons targeted for 'honor based violence' by a family group in Yemen in retribution for perceived dishonor inflicted upon the family by the petitioner or members of the petitioner's family." Petitioner argues that "persons targeted for honor based violence" can be analogized to persons at risk of female genital mutilation ("FGM"), a social group that meets the standard for recognition under the INA. *See Abay v. Ashcroft*, 368 F.3d 634 (6th Cir. 2004). But unlike victims of FGM, "persons targeted for honor based violence" share no immutable characteristics—gender, tribal/regional origin, belief system, age or anything else—other than their persecution. This is not sufficient to be recognized as a social group under the INA. See *Castellano-Chacon*, 341 F.3d at 547 (distinguishing between social groups based on whether they "share an immutable characteristic, or at least a fundamental characteristic that either cannot be changed, or should not be required to be changed because it is fundamental to the members' individual identities or consciences").

The record is also devoid of any evidence indicating that "persons targeted for honor based violence" would otherwise meet the requirements of particularity and visibility. Although it is conceivable that such persons might constitute a group that would be recognized in Yemen as a "discrete class of persons," the group is unlikely to be recognizable in the community, both because its quality is transient (i.e., people are not targeted for such violence before they are believed to have

5

caused dishonor and may no longer be targeted after they have made amends) and also because it is based on a local or familial designation, and so does not achieve social visibility.[2]

Even if this Court were to find that the definition advanced by Ba-Alawi constitutes a "particular social group," there is no evidence to show that Ba-Alawi is a member of this group. Indeed, the evidence that Ba-Alawi points to does not indicate that men are routinely (or ever) victims of honor based crime in Yemen. On the contrary, all of the evidence presented supports the conclusion that women, almost exclusively, are the subject of honor based crimes.

Thus, Ba-Alawi has failed to establish that his proposed social group has requisite particularity and social visibility, and he has also failed to establish a nexus between himself and his proposed social group.

Furthermore, Ba-Alawi has failed to establish that it is more likely than not that he will suffer persecution if returned to Yemen. While there may be some evidence in the record to indicate that there is a threat of both state and extrajudicial violence in Yemen, general conditions of violence in Yemen are not sufficient for the purposes of withholding. See *Gumbol v. INS*, 815 F.2d 406, 411 (6th Cir. 1987).

The lion's share of the evidence suggests that it is unlikely that Ba-Alawi will suffer persecution if returned to Yemen. As the BIA noted, Ba-Alawi's sister has continued to live in

---

[2]The United Nations has reported that there are hundreds of women killed in the name of honor each year. *See* U.N. Comm. on Human Rights, *Civil and Political Rights, Including Questions of: Disappearances and Summary Executions: Report of the Special Rapporteur, Ms. Asma Jahangir,* at 78-84, U.N. Doc. E/CN.4/2000/3 (2000).

Yemen unharmed and has married and borne three children since the time of the threats. In addition, there is no evidence to demonstrate that the threats were recurrent or ongoing, or that Ba-Alawi had been threatened at any time other than the single incident more than a decade ago.

### III.   Voluntary Departure

Ba-Alawi also appeals the BIA's denial of his application for voluntary departure. He argues that the BIA erred as a matter of law when it denied him voluntary departure because he is excused from the requirement to present a valid travel document when "the document is already in possession of the Service." 8 C.F.R. 1240.26(b)(3)(1)(B).

The provision that Ba-Alawi relies upon, however, provides an exception from inspection and photocopying only. It does not provide an exception from possessing a travel document that is sufficient for entry into Yemen. *See Atmadja v. United States Att'y Gen.*, 322 F. App'x 889, 890 (11th Cir. 2009) (interpreting the INA to require that "an alien must possess a valid, unexpired passport even if the passport is in the possession of the DHS, absent evidence that it is unnecessary in order to return to the country of removal, is consistent with the language of the regulation"). Regardless of the location of Ba-Alawi's expired passport, it is clear that Ba-Alawi does not currently possess a valid passport or other document sufficient for travel.[3] Therefore, Ba-Alawi is not eligible for voluntary departure. 8 C.F.R. § 1240.36(c)(2).

---

[3]During hearings before the IJ, no passport could be located in Ba-Alawi's DHS file and there is no record of Ba-Alawi's passport having been in the possession of DHS. There is some evidence on the record to indicate that the passport may have been misfiled by DHS; alternatively, it may have never been turned over to the agency.

**CONCLUSION**

Because Ba-Alawi has failed to establish that his proposed social group has the requisite particularity and social visibility, and he has not demonstrated sufficient likelihood of persecution if returned to Yemen, we hereby **DENY** the petition for review.