# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 27, 2012

No. 11-60338

Lyle W. Cayce
Clerk

ANGEL MAURICIO ALCANTARA,

Petitioner

v.

ERIC H. HOLDER, JR., U. S. ATTORNEY GENERAL,

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A078 996 185

Before DeMOSS, STEWART, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Petitioner Angel Mauricio Alcantara ("Alcantara"), a native and citizen of Mexico, who conceded removability, petitions for review of a decision by the Board of Immigration Appeals ("BIA") dismissing his appeal from the Immigration Judge's ("IJ") denial of his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-60338

## I. Factual and Procedural Background

We briefly review the facts that are relevant to Alcantara's claims for relief. At the hearing before the IJ, Alcantara testified that in Mexico in October of 1993, he saw Miguel Ortiz ("Ortiz") unload packages from an airplane that had landed on a highway near his place of business and subsequently reported the suspicious activity to the local police. Alcantara claimed that Ortiz and his father, Angel Ortiz Lugo ("Lugo"), who was at that time an attorney for the state of Morales, were involved in drug trafficking. The next day, Ortiz and three accomplices came to Alcantara's place of business and threatened to kill Alcantara for informing the police about his illegal activity. A gunfight ensued and Ortiz was killed. Alcantara was later arrested for murder and held in prison for eighteen months until he was acquitted of the crime. While in prison, Alcantara was beaten and burned by two prison guards who acted under orders from Lugo. Alcantara testified that after being released from prison, Lugo and his associates followed him and threatened him and his family until he entered the United States in 1995. Alcantara argues that he would continue to be targeted by corrupt organized crime figures and that if returned to Mexico he would be killed or seriously injured.

The IJ found that Alcantara was credible but nevertheless denied Alcantara's application for asylum, withholding of removal, and CAT relief, and ordered that Alcantara be removed to Mexico. The BIA adopted and affirmed the IJ's decision, and dismissed Alcantara's appeal.

## II. Discussion

Given that the BIA approved of, and relied upon, the IJ's decision, we review the decisions of both the BIA and the IJ. *Zhu v. Gonzales*, 493 F.3d 588, 593 (5th Cir. 2007). This court reviews the factual findings of the BIA and IJ for substantial evidence, and reviews questions of law *de novo*. *Id.* at 594; *see Efe v. Ashcroft*, 293 F.3d 899, 903 (5th Cir. 2002). This court may reverse a decision

No. 11-60338

on a factual finding only when the evidence "compels" it. *Zhu*, 493 F.3d at 594.

Alcantara first challenges the BIA's decision that he is ineligible for asylum because he did not file his application within one year of his entry to the United States. *See* 8 U.S.C. § 1158(a)(2)(B). He raises a two-pronged challenge to the determination that his asylum application was not timely. Pursuant to the REAL ID Act of 2005, our court has jurisdiction to review a determination of timeliness that turns on a constitutional claim or question of law, but lacks jurisdiction to review such a determination if based on findings of fact. *Nakimbugwe v. Gonzales*, 475 F.3d 281, 284 (5th Cir. 2007).

Regarding this timeliness issue, Alcantara first contends that the BIA erred in holding that 8 C.F.R. § 1208.3 provides that submission of Form I-589 is the sole means by which an asylum application may be filed, and that the regulations do not provide for the constructive filing of an application. As this issue involves the BIA's construction of a federal regulation, it is a question of law over which we have jurisdiction. Nevertheless, because Alcantara's briefing on this point amounts to no more than one sentence, with no citations to legal authority challenging the BIA's legal conclusion, he has waived this issue. Fed. R. App. P. 28(a)(9).

Alcantara's second challenge on the issue of timeliness is that the BIA erred in finding that he failed to establish he was prevented from timely filing the Form I-589 by immigration officials because they did not provide him with asylum forms when he orally requested asylum. According to the BIA, Alcantara did not pursue an asylum application earlier due to advice he received from pro bono counsel. Alcantara argues that he would have timely filed his application had immigration officials who questioned him and his wife at the airport upon her entry to the United States in 1998 provided him with the asylum forms when he and his wife expressed a fear of persecution or harm upon return to Mexico. However, the substance of Alcantara's argument is that the BIA factually erred

3

in assessing the testimony and finding that Alcantara did not file due to the advice of counsel rather than due to the actions of the immigration officials. This is a challenge to a factual finding and we lack jurisdiction to consider the issue. *See supra.* Therefore, Alcantara's challenge to the BIA's determination that his asylum application was not timely is dismissed.

Alcantara next contends that the BIA erred in denying his application for withholding of removal. In order to obtain withholding of removal, an applicant "must show that 'it is more likely than not' that his life or freedom would be threatened by persecution" based on one of five enumerated grounds: race, religion, nationality, membership in a particular social group, or political opinion. *Efe*, 293 F.3d at 906 (quoting 8 C.F.R. § 208.16(b)(1)). The BIA's determination that Alcantara did not suffer past persecution and does not harbor a well-founded fear of future persecution based on an enumerated ground is supported by substantial evidence. The BIA found that the physical violence and threats against Alcantara were motivated by general criminality and a personal vendetta and not his political opinion, and further that his objection to corruption or criminality did not place him in a particular social group. On appeal, he has not stated "specific, detailed facts" that show that he would "be *singled out* for persecution" based on a political opinion or membership in a defined social group. *Faddoul v. INS*, 37 F.3d 185, 188 (5th Cir. 1994) (internal quotation marks and citation omitted); *see INS v. Elias-Zacarias*, 502 U.S. 478, 481-83 (1992); *Matter of S-E-G-*, 24 I. & N. Dec. 579, 582-84 (BIA 2008).

Finally, Alcantara contends that the BIA erred in denying his application for relief under the CAT. To obtain CAT relief, Alcantara must show that it is more likely than not that he will be tortured upon return to Mexico. 8 C.F.R. § 208.16(c)(2); *see Tamara-Gomez v. Gonzales*, 447 F.3d 343, 350 (5th Cir. 2006). For CAT purposes, "Torture is defined as any act by which severe pain or suffering . . . is intentionally inflicted on a person . . . when such pain or

suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1); *Tamara-Gomez*, 447 F.3d at 350.  Thus, CAT relief requires a two part analysis: "first, is it more likely than not that the alien will be tortured upon return to his homeland; and second, is there sufficient state action involved in that torture." *Tamara-Gomez*, 447 F.3d at 350-51 (footnote omitted).

Alcantara heavily emphasizes the question of state action in this case, arguing that his past torture by two state prison guards, inflicted on him while he was in pretrial detention in state prison, necessarily includes sufficient state action for CAT relief and requires no further acquiescence from higher level government officials.  The IJ and BIA found that the two prison guards were acting based on personal vendettas, on the instruction of Lugo, and not in their official capacity as required to meet the CAT definition of torture.  However, to resolve this appeal, it is not necessary for this court to determine the meaning of the state action required by 8 C.F.R. § 208.18(a).

The BIA ultimately found that Alcantara had not established the requisite likelihood of future torture.  On appeal, Alcantara has not produced evidence that compels the contrary conclusion.  CAT relief is prospective.  In assessing the likelihood of torture if returned, past torture is only one element to be considered.  8 C.F.R. § 208.16(c)(3); *Tamara-Gomez*, 447 F.3d at 350 n.11.  Even assuming, without deciding, that the past torture by the prison guards included sufficient state action or government acquiescence to meet the definition of torture under the CAT, there is substantial evidence in the record to support the BIA's determination that Alcantara has not shown that it is more likely than not that he will be tortured upon return to Mexico.  The past torture was inflicted by specific guards in prison while Alcantara was accused of a crime he was later acquitted of, and at the instigation of a drug trafficker whose current position

No. 11-60338

and whereabouts are not known.  Alcantara has produced nothing to show that it is more likely than not that any state officials would torture him or acquiesce in his torture upon his return to Mexico.  *See Efe*, 293 F.3d at 907-08; *Chen v. Gonzales*, 470 F.3d 1131, 1143 (5th Cir. 2006).

### III. Conclusion

For the foregoing reasons, Alcantara's appeal is DISMISSED in part and DENIED in part.