**Ronald Alberto ZAVALETA–LOPEZ, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

No. 08–3673.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Dec. 16, 2009.

Opinion filed: Jan. 14, 2010.

Joyce A. Phipps, Esq., Plainfield, NJ, for Petitioner.

Richard M. Evans, Esq., Anna Nelson, Esq., Christina B. Parascandola, Esq., United States Department of Justice Office of Immigration Litigation, Washington, DC, for Respondent.

Before: FUENTES, ROTH and VAN ANTWERPEN, Circuit Judges.

OPINION

PER CURIAM.

Almost immediately after Ronald Alberto Zavaleta–Lopez, a citizen of El Salvador, entered the United States without inspection in 2005, the Government charged him with removability. Conceding the charge, Zavaleta–Lopez sought asylum, withholding, and relief under the Convention Against Torture ("CAT").

In his affidavit in support of his application, Zavaleta–Lopez stated that he had been robbed more than once and threat-

ened by the "maras" or gangs. R. 190. He noted one incident in particular in which the maras robbed and assaulted him and threatened to kill him if he denounced them to the authorities. *Id.* Apparently from that incident, the maras obtained Zavaleta–Lopez's cell-phone number and called to threaten him, telling him they were watching his every move. *Id.* He stated in his affidavit that he did not seek help from the authorities. *Id.*

At his hearing, Zavaleta–Lopez's lawyer explained that Zavaleta–Lopez based his claims on the treatment he faced as a member of the particular social group described as young men who have been targeted by gangs for membership and who have refused to join gangs. R. 98. In his testimony, Zavaleta–Lopez elaborated that he had problems with members of the Mara Salvatrucha in his native El Salvador in 2004, namely that they pressed him to join the gang, and threatened that they would kill him if he did not join. R. 87–88. When he told his parents about the problems he was having, they moved "that same year" (which appears also as "2001" in the transcript). R. 89. After the move, he regularly returned to his old neighborhood to visit his girlfriend. R. 90. During one visit at the end of December 2004, gang members accosted him and told him to join them. *Id.* When he turned his back on them, they pulled guns on him, robbed him, and assaulted him. *Id.* He repeated that they subsequently called his home and harassed him to join them, threatening that they would kill him if he did not join. R. 91. Zavaleta–Lopez reported the incident to the police, but police efforts to capture the perpetrators were unsuccessful. R. 91–92. He testified that gang members were still looking for him after he left the country in 2005. R. 94.

The Immigration Judge ("IJ") denied Zavaleta–Lopez's applications for relief. The IJ recognized that gang violence is a problem in El Salvador but held that Zavaleta–Lopez had not shown that he was targeted on the basis of a protected ground. The IJ concluded that Zavaleta–Lopez had failed to identify a particular social group of which he was a part and had not presented any evidence that the gang recruitment related in any way to an actual or imputed political opinion held by Zavaleta–Lopez. The IJ separately rejected the CAT claim, noting, among other things, that the El Salvadoran government, which took steps to try to find Zavaleta–Lopez's attackers, had not tortured or acquiesced to any torture of Zavaleta–Lopez.

Zavaleta–Lopez appealed the denial of his asylum claim to the Board of Immigration Appeals ("BIA"). R. 12–16. Through counsel, he highlighted his testimony that he did not join the Mara Salvatrucha because gang members "were bad people who kill and rob," and argued that qualified for asylum because he refused gang membership based on his religious beliefs. R. 16.

The BIA also concluded that Zavaleta–Lopez had not shown that his membership in a particular social group was a reason for the alleged persecution by the Mara Salvatrucha. The BIA noted the problem with gangs in El Salvador, but agreed with the IJ that Zavaleta–Lopez's proffered social group was too sweeping and without the social visibility required to qualify as a particular social group. The BIA also noted that any political opinion, imputed or otherwise, of Zavaleta–Lopez was unrelated to the Mara Salvatrucha's recruitment efforts. The BIA held that no evidence supported Zavaleta–Lopez's argument on appeal that he was targeted by the gang, or that he opposed them, on the basis of his religious beliefs. The BIA rejected Zavaleta–Lopez's claims for asylum, withholding, and CAT relief.

Zavaleta–Lopez, through counsel, presents a petition for review. We have jurisdiction pursuant to 8 U.S.C. § 1252. We consider questions of law *de novo.* *See Gerbier v. Holmes,* 280 F.3d 297, 302 n. 2 (3d Cir.2002). We review factual findings for substantial evidence. *See Butt v. Gonzales,* 429 F.3d 430, 433 (3d Cir.2005).

In his petition, Zavaleta–Lopez argues that he is entitled to asylum and assigns two errors to the IJ. He contends that the IJ erred in concluding that he had not suffered past persecution based on a protected ground, and that the IJ erred in holding that he is not a member of a particular social group.[1] On review, we find no error, and we will deny the petition for review.

To be eligible for asylum, a petitioner must show past persecution or a well-founded fear of future persecution, by the government or forces that the government is not able or willing to control, on account of a specific statutorily enumerated ground, namely race, religion, nationality, membership in a particular social group, or political opinion. *See* 8 U.S.C. § 1101(a)(42); *Kibinda v. Attorney Gen. of the United States,* 477 F.3d 113, 119 (3d Cir.2007). Zavaleta–Lopez did not establish past persecution on account of a protected ground.

To establish persecution on the basis of membership in a social group, "an alien must (1) identify a group that constitutes a 'particular social group' …, (2) establish that he or she is a member of that group, and (3) show that he or she would be persecuted or has a well-founded fear of persecution based on that membership." *Fatin v. INS,* 12 F.3d 1233, 1240 (3d Cir. 1993). A particular social group, as the BIA has explained in a definition we have accepted, is " 'a group of persons all of whom share a common, immutable characteristic.' " *Id.* (quoting *Matter of Acosta,* 19 I. & N. Dec. 211, 233 (BIA 1985)). We have recognized the difficulty of discerning the contours of particular social groups, but we focus on whether putative group members possess common, immutable characteristics such as race, gender, or a prior position, status, or condition, or characteristics that are capable of being changed but are of such fundamental importance that persons should not be required to change them, such as religious beliefs. *See Escobar v. Gonzales,* 417 F.3d 363, 366–67 (3d Cir.2005).

In this case, we agree with the agency that Zavaleta–Lopez did not identify a particular social group as that term is used in the asylum statute. As Zavaleta–Lopez notes, we previously declined to decide a similar question in the first instance, namely whether " 'young Honduran men who have been actively recruited by gangs and who have refused to join the gangs' " is a particular social group. *Valdiviezo–Galdamez v. Attorney Gen. of the United States,* 502 F.3d 285, 290 (3d Cir.2007). However, since that decision, the BIA has weighed in on a similar question even closer to the question at issue in this case. Namely (and contrary to Zavaleta–Lopez's implications to the contrary), in *Matter of S–E–G–,* the BIA held that "a proposed group of young Salvadorans who have been subject to recruitment efforts by criminal gangs, but who have refused to join for personal, religious, or moral reasons" did not constitute a particular social group. *See* 24 I. & N. Dec. 579, 588 (BIA 2008). The BIA concluded that the group simply did not have a shared characteristic with the social visibility required under its precedent. *See id.* at 587–88. After a

---

1. We agree with the Respondent that by not addressing in his brief the agency's conclusions regarding his withholding and CAT claims, Zavaleta–Lopez has waived these issues on appeal. *See Ghana v. Holland,* 226 F.3d 175, 180 (3d Cir.2000).

review of the Department of State Country Report in that case, the BIA also determined that the risk of gang violence was not limited to young men who resist recruitment but instead affected all segments of the population. *See id.* The evidence is similar in this case; for instance, the Country Report in this case highlights that gang-related violence is widespread. R. 17. In light of the background evidence, the BIA reasonably relied on its prior precedents to conclude that the social group Zavaleta–Lopez proposed is simply too diffuse and without the common, immutable characteristics necessary to establish the contours of a particular social group.

Furthermore, Zavaleta–Lopez failed to establish with his testimony and other evidence that he would be persecuted on account of his political opinion or an imputed political opinion. His simple resistance to the recruitment efforts of the Mara Salvatrucha is not enough. *See Lukwago v. Ashcroft,* 329 F.3d 157, 173 (3d Cir.2003) (citing *INS v. Elias–Zacarias,* 502 U.S. 478, 483, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992), for its support of the proposition that mere opposition to forced conscription into guerilla or rebel forces is not the same as political opposition to such a group).

Moreover, there is no evidence in the record that Zavaleta–Lopez was targeted by the Mara Salvatrucha because of his religious beliefs. Although he raised this issue before the BIA, he did not present evidence of this in his affidavit or testimony (he did not even check the box for religious persecution on his asylum application). At his hearing, Zavaleta–Lopez said that he resisted the efforts to recruit him simply because the Mara Salvatrucha were "bad people who kill and rob." R. 88.

In sum, although Zavaleta–Lopez faced violence from gangs in El Salvador, he did not prove that he was singled out for past persecution by those gangs on the basis of one of the protected grounds. And he has not shown that he has a well-founded fear of future persecution. Generally harsh conditions shared by many other persons, such as the widespread gang violence described in the Country Report in this case, do not amount to persecution. *See Al–Fara v. Gonzales,* 404 F.3d 733, 740 (3d Cir.2005). For these reasons, we will deny his petition for review.