# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2760

_____

| | | |
|---|---|---|
| Ingrid Veronica Marroquin-Ochoma, also known as Melissa Diaz, | * * * | |
| Petitioner, | * | |
| | * | Petition for Review of an Order of |
| v. | * | the Board of Immigration Appeals. |
| | * | |
| Eric H. Holder, Jr.,[1] United States Attorney General, | * * | |
| | * | |
| Respondent. | * | |

_____

Submitted: March 10, 2009
Filed: July 28, 2009

_____

Before MURPHY, MELLOY, and SHEPHERD, Circuit Judges.

_____

MELLOY, Circuit Judge.

Ingrid Marroquin-Ochoma, a native and citizen of Guatemala, petitions for review of a decision by the Board of Immigration Appeals (the "BIA") denying her application for asylum, withholding of removal, and relief under the Convention Against Torture (the "CAT"). We deny her petition for review.

_____

[1]Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Eric H. Holder, Jr., is substituted for former Attorney General Michael B. Mukasey as Respondent in this case.

Marroquin-Ochoma entered the United States in May of 2005. Removal proceedings were commenced against her on March 31, 2006. Marroquin-Ochoma conceded removability, and she applied for relief from removal on grounds of persecution on account of a particular social group and political opinion. In support of her application, Marroquin-Ochoma testified and submitted evidence that she left Guatemala because gang members had threatened her on account of her position as someone with access to money and on account of an imputed anti-gang political opinion.

From 2003 until early 2005, Marroquin-Ochoma worked with three other people in the payroll department of a large export company. She describes her employment as being in a bank on the company premises, and she frequently handled cash in her position. Shortly after she started with the company, Marroquin-Ochoma began receiving threatening notes at home from gang members. At least one note was signed "MS," for the gang known as Mara Salvatrucha. The notes demanded money and pressed her to join the gang. Gang members also called her at home and told her family to either give the gang money or turn Marroquin-Ochoma over to the gang. The notes and calls threatened her life and the lives of her family members if the demands were not met. She was never contacted in person. Although Marroquin-Ochoma did not take the threats seriously at first, she grew increasingly concerned as the threats continued.

Marroquin-Ochoma informed her employer of the threats, but she did not ask for any assistance from the company's security department, even though security officers would sometimes escort employees home. She did report the threats to the police, however. Although for a time the police sent extra patrols to her neighborhood, the police took no other action. The police instructed Marroquin-

Ochoma to report her claims to the public prosecutor, but she did not do so because she believed the gang's power made such efforts futile.

Approximately one year after Marroquin-Ochoma joined the company, the threats caused her to leave her job and eventually flee Guatemala. The threats against her family continued even after she left, and gang members beat her father in reprisal for her refusal to concede to the gang's demands.

The immigration judge (the "IJ") found Marroquin-Ochoma generally credible, but he ultimately denied each of her claims. The IJ determined that Marroquin-Ochoma's "resistance to the role of gangs" did not constitute a political opinion. The IJ also concluded that Marroquin-Ochoma failed to show that the threats were based on her membership in a particular social group, because "being a person in a position of responsibility and with direct access to money[,] who refused demands for money and recruitment by the gangs," does not make someone a member of a particular social group. The IJ further held that even if Marroquin-Ochoma had established membership in a particular social group, she had not established past persecution or a well-founded fear of future persecution for purposes of asylum—or established a clear probability that her life or freedom would be threatened for purposes of withholding of removal—because she had not shown that the Guatemalan government was unable or unwilling to control the gang. Finally, the IJ found that Marroquin-Ochoma had not shown government acquiescence, as required to support her CAT claim. On administrative appeal, the BIA affirmed and adopted the opinion of the IJ, adding that Marroquin-Ochoma had failed to demonstrate that the threats rose to the level of persecution.[2]

_____

[2]Marroquin-Ochoma's opening brief does not present arguments challenging the BIA's determination that the threats did not rise to the level of persecution, and the Government argues she has therefore waived her past-persecution claim and cannot show a well-founded fear of future persecution. We decline to address this argument because, even assuming Marroquin-Ochoma has shown "persecution or a well-

-3-

Marroquin-Ochoma now argues before this court that 1) remand is necessary for meaningful consideration as to whether the threats were on account of an imputed anti-gang political opinion and that 2) the BIA "erred in holding that the government of Guatemala is able to control the Mara Salvatrucha."

## II.

To be eligible for asylum, an applicant must show that she is unable or unwilling to return to her country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). "Where there has been persecution on account of political opinion, it does not matter if the applicant actually holds the political opinion that the persecutor attributes to her. Rather, we consider the political views the persecutor rightly or in error attributes to a victim." De Brenner v. Ashcroft, 388 F.3d 629, 635 (8th Cir. 2004) (internal quotation and alteration omitted). It is the political opinion attributed to the victim, not the political opinion of the persecutor, that is ultimately relevant. Turay v. Ashcroft, 405 F.3d 663, 668 (8th Cir. 2005) (citing INS v. Elias-Zacarias, 502 U.S. 478, 482 (1992)). The political opinion must be "'at least one central reason' for [the] persecution." Carmenatte-Lopez v. Mukasey, 518 F.3d 540, 541 (8th Cir. 2008) (quoting 8 U.S.C. § 1158(b)(1)(B)(I)). But the persecution need not be solely, or even predominantly, on account of the imputed political opinion. Parussimova v. Mukasey, 555 F.3d 734, 739–41 (9th Cir. 2009); cf. De Brenner, 388 F.3d at 636. Here, Marroquin-Ochoma argues that the gang members' threats were motivated by an anti-gang political opinion that the gang members imputed to her based on her refusal to join the gang or otherwise succumb to their extortionate demands.

---

founded fear of persecution," her claims fail on the grounds at the forefront of her petition.

-4-

Where, as here, the BIA adopts the decision of an IJ but adds additional reasoning, we review both decisions. Setiadi v. Gonzales, 437 F.3d 710, 713 (8th Cir. 2006). We defer to the agency's "interpretation of ambiguous statutory terms if the interpretation is reasonable and consistent with the statute," De Brenner, 388 F.3d at 636 (internal quotation omitted), and we review the IJ's factual findings for substantial evidence in light of the record as a whole, Hassan v. Gonzales, 484 F.3d 513, 516 (8th Cir. 2007). "To reverse the finding that the alleged persecution was not based on a protected ground, it is necessary that the record *compel* the finding that a protected ground motivated the [persecutor's] actions." Gomez v. Gonzales, 425 F.3d 543, 545 (8th Cir. 2005) (citing Elias-Zacarias, 502 U.S. at 481 & n.1).

At the outset, we reiterate that "careful attention to the particular circumstances surrounding the alleged persecution remains necessary even if the persecution is generally categorized as extortion or recruitment." De Brenner, 388 F.3d at 638 n.2; see also Zhang v. Gonzales, 426 F.3d 540, 546–47 (2d Cir. 2005) (rejecting "the categorical rule that opposition to government extortion cannot serve as the basis for a claim based on political opinion" and instead requiring "examination of the political context in which the dispute took place" (internal quotations omitted)). Motives of extortion and recruitment do not, therefore, preclude a finding of additional motives that may concern a protected ground. See De Brenner, 388 F.3d at 637.

We find little indication here, however, that the IJ imposed an impermissible "single motive" requirement at the expense of a meaningful inquiry. See id. ("[T]he BIA in this instance improperly demanded that the persecution occur *solely* due to a protected basis."). Rather, the IJ stated that he "[did] not believe that [Marroquin-Ochoma's refusal to join the gang] really [was] a political opinion" because "[i]nadequate evidence ha[d] been presented to indicate that the gangs actually operate in a political framework, and the problems the respondent had in no way were related to her expression of any political opinion." He continued, "Resistance to criminal activity is not a political opinion *in this context*." (emphasis added). The IJ did not

improperly conclude that no extortion or recruitment could be motivated by political opinion; the IJ merely concluded that Marroquin-Ochoma had presented insufficient evidence to show that Mara Salvatrucha attributed an anti-gang political opinion to her.

Marroquin-Ochoma argues that Mara Salvatrucha is not a "garden variety street gang" but rather is political in nature and that the mere refusal to join the gang is therefore sufficient to find an imputed political opinion. At most, evidence that the gang is politically minded could be considered evidence that the gang members would be somewhat more likely to attribute political opinions to resisters. But even were we to conclude that Mara Salvatrucha does in fact operate "in a political framework," a "generalized 'political' motive underlying the [gang's] forced recruitment [would be] inadequate to establish . . . the proposition that" the gang believes resistance to those recruitment efforts is based on an anti-gang political opinion. Elias-Zacarias, 502 U.S. at 482 ("Even a person who supports a guerilla movement might resist recruitment for a variety of reasons—fear of combat, a desire to remain with one's family and friends, a desire to earn a better living in civilian life, to mention only a few.").

Marroquin-Ochoma points to no additional evidence in the record—and our review finds none—supporting her contention that the threats were on account of an imputed anti-gang political opinion. Although greater elaboration by the IJ would have been desirable, the IJ's brevity in this case is consistent with the dearth of evidence in the record supporting a contrary conclusion. See Purwantono v. Gonzales, 498 F.3d 822, 825 (8th Cir. 2007) (stating that there was "no evidence" of persecution on account of political belief where petitioner was beaten unconscious for resisting the recruiting efforts of a militant group); Dominguez v. Ashcroft, 336 F.3d 678, 680 (8th Cir. 2003) ("A reasonable fact finder could decide from this record that the guerillas were simply trying to fill their ranks and were not concerned with [the petitioner's] political beliefs."); see also Ramos-Lopez v. Holder, 563 F.3d 855 (9th Cir. 2009) (deferring to "the BIA's determination that resistance to a gang's recruitment efforts

alone does not constitute political opinion" (alterations and internal quotation omitted)); In re S-E-G-, 24 I. & N. Dec. 579, 588–89 (BIA 2008) (concluding that the respondents "failed to show a political motive in resisting gang recruitment" where "there [was] no evidence in the record that the respondents were politically active or made any anti-gang political statements"); In re E-A-G-, 24 I. & N. Dec. 591, 596 (BIA 2007) ("[T]he respondent's refusal to join MS, without more, does not constitute a 'political opinion.'"). Unlike the evidence presented in De Brenner, the record here contains no evidence that the gang members considered Marroquin-Ochoma "a political enemy." See De Brenner, 388 F.3d at 638.

Opposition to a gang such as Mara Salvatrucha may have a political dimension, but refusal to join the gang is not necessarily politically motivated. Consequently, the mere refusal to join Mara Salvatrucha, without more, does not compel a finding that the gang's threats were on account of an imputed political opinion. Marroquin-Ochoma's asylum claim thus fails.

### III.

To qualify for withholding of removal, an applicant has the burden of showing "a clear probability that [her] 'life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion.'" Malonga v. Mukasey, 546 F.3d 546, 551 (8th Cir. 2008) (quoting 8 U.S.C. § 1231(b)(3)) (additional quotation and citations omitted). Marroquin-Ochoma's political-opinion arguments for asylum apply equally to her withholding-of-removal claim. For the reasons discussed above, however, the record does not compel a finding that the threats were on account of an imputed political opinion. We therefore also deny this claim.

-7-

IV.

Unlike asylum and withholding of removal, the CAT does not require that Marroquin-Ochoma show a protected ground to be eligible for relief. Rather, to qualify for CAT relief, Marroquin-Ochoma must demonstrate that it is more likely than not that she will be tortured if removed to Guatemala. See 8 C.F.R. § 1208.16(c)(2). To provide a basis for relief, the torture must be "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." Id. § 1208.18(a)(1). For purposes of CAT relief, "[a]cquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene." Id. § 1208.18(a)(7). "This inquiry centers upon the willfulness of a government's non-intervention. A government does not acquiesce in the torture of its citizens merely because it is aware of torture but powerless to stop it, but it does cross the line into acquiescence when it shows willful blindness toward the torture of citizens by third parties." Mouawad v. Gonzales, 485 F.3d 405, 413 (8th Cir. 2007) (internal quotations and citation omitted).[3]

---

[3]The IJ, relying on In re S-V-, 22 I. & N. Dec. 1306 (BIA 2000), stated that CAT relief does not extend to torture by entities that the government is unable to control. The correctness of this standard is not squarely before us, because the IJ ultimately concluded that the Guatemalan government was not unable to control the gang members—thus mooting his own reliance on that standard. We note, however, that several of our sister circuits have expressly or effectively refuted this BIA precedent, indicating that evidence of unwillingness may lead to a finding of acquiescence notwithstanding that the government would be unable to control the torturer even if it were willing to do so. See, e.g., Silva-Rengifo v. Att'y Gen., 473 F.3d 58, 65 (3d Cir. 2007) ("[A]lthough a government's ability to control a particular group may be relevant to an inquiry into governmental acquiescence under the CAT, that inquiry does not turn on a government's 'ability to control' persons or groups engaging in torturous activity."); Tunis v. Gonzales, 447 F.3d 547, 551 (7th Cir. 2006) (finding the fact that a government is not responsible for individuals whom it is unable to control "[t]rue, but irrelevant" in light of evidence that the government condoned

Marroquin-Ochoma has submitted numerous articles and reports showing the government's difficulty in controlling the extensive gang violence in Guatemala, as well as some evidence of general police reluctance to pursue gang members. Based on this evidence, she argues that the Guatemalan government "condones" the gang's activity.[4] But the record also includes evidence that the government aggressively prosecutes gang members. On the whole, the record before us indicates that law enforcement is weak and inexperienced, not that it acquiesces in gang activity. See Bartolo-Diego v. Gonzales, 490 F.3d 1024, 1029 (8th Cir. 2007) ("Even though the government's failure to investigate and punish other individuals and clandestine criminal groups who break the law has resulted in human rights abuses, the failure is due more to a weak and inefficient judicial system than to government acquiescence or approval.").

Significantly, the record also includes evidence that the police did respond to her report by increasing patrols in her neighborhood and that it was Marroquin-Ochoma herself who declined to formalize her complaint to the public prosecutor. The IJ concluded that "the police took a reasonable response" to her request for assistance, and substantial evidence supports the conclusion that the police were not unwilling to control the gang members. If anything, the record shows that the government attempted to protect Marroquin-Ochoma and that Marroquin-Ochoma, without adequate justification, declined to pursue the avenues of law enforcement available to her. Cf. Khilan v. Holder, 557 F.3d 583, 586 (8th Cir. 2009) (per curiam) (denying asylum and withholding of removal claims where, inter alia, petitioner refused to aid

the torture).

[4]Although Marroquin-Ochoma frames her argument in terms of the "unable or unwilling" standard relevant for her asylum and withholding claims, she does state that she is also appealing the denial of CAT relief. Because the "acquiescence" analysis overlaps significantly with the "unable or unwilling" analysis and the two are often argued together, we consider Marroquin-Ochoma's CAT argument sufficiently presented for appeal.

the police investigation into petitioner's persecutors). When paired with such countervailing facts specific to the petitioner, evidence of general uncontrolled gang activity does not dictate a conclusion that the government acquiesced in the specific acts directed toward the petitioner. Menjivar v. Gonzales, 416 F.3d 918, 923 (8th Cir. 2005).

We therefore find that substantial evidence supports the BIA's determination that Marroquin-Ochoma failed to establish that the Guatemalan government condoned or acquiesced in the gang members' threats as required under the CAT.

\* \* \*

Accordingly, we deny the petition for review.
_____