# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 10-2793
No. 11-1308

_____

Malaquias Ortiz-Puentes; Juan     *
Ortiz-Puentes; Mari Consuelo     *
Ortiz-Puentes,     *
    *
         Petitioners,     *    Petition for Review of
    *    an Order of the Board
       v.     *    of Immigration Appeals.
    *
Eric H. Holder, Jr., Attorney General     *
of the United States,     *
    *
         Respondent.     *

_____

Submitted: September 22, 2011
Filed: December 1, 2011

_____

Before LOKEN, BEAM, and MURPHY, Circuit Judges.

_____

LOKEN, Circuit Judge.

Petitioners are three siblings, citizens of Guatemala, who attempted to enter the United States in December 2004 and were placed in removal proceedings. Conceding removability, they applied for asylum and withholding of removal, claiming past persecution and a well-founded fear of future persecution by "criminal gangs which control most of Guatemala now" based upon petitioners' political opinion and membership in a particular social group. An immigration judge (IJ) denied the

applications, and the Board of Immigration Appeals (BIA) dismissed petitioners' administrative appeal on the merits. Some months later, the BIA denied their motion to reconsider its prior decision and to reopen the proceedings based on ineffective assistance of counsel. Petitioners seek judicial review of both decisions. We deny the petitions for review.

## I. Denial of Asylum and Withholding of Removal

Petitioners Malaquias and Juan Ortiz-Puentes and their father, Gaspar, testified at petitioners' removal hearing. Counsel Roy Petty advised that he would not call the third petitioner, Mari, because "she was very young when she left Guatemala, and I'm not sure there's a need for repetitive testimony." Petitioners testified that, as teenagers in Guatemala, they were harassed and beaten by members of criminal gangs who stopped them on the way to school, demanded money, and urged them to join the gangs, commit violent crimes, and sell drugs. The gangsters threatened to burn down their house or "do something" to their family if they refused. Both refused to join even though the gangs twice "beat [Malaquias] up pretty bad." Petitioners were not aware of any political involvement by the gangs. Juan and Gaspar did not know if their family was involved in Guatemalan politics. Petitioners left Guatemala and traveled to the United States in October 2004, leaving their mother and younger siblings behind. Petty introduced supporting declarations, articles discussing Central American gangs, and assessments of Guatemala's response to the problem.

An alien is eligible for asylum if the Attorney General determines that he or she is a "refugee," 8 U.S.C. § 1158(b)(1)(A), defined as a person who is unable or unwilling to return to his or her country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). A protected ground must be "at least one central reason for persecuting the applicant." § 1158(b)(1)(B)(i).

Petitioners argued they were members of a "social group" comprised of young Guatemalans who refused to join gangs and were persecuted -- beaten -- as a result. In dismissing their administrative appeal, the BIA agreed with the IJ that "the nature and context of the respondents' claim -- one which entails criminal violence and recruitment efforts by a Guatemalan gang -- does not implicate an enumerated protected ground," citing Matter of S-E-G-, 24 I. & N. Dec. 579 (BIA 2008). We agree. A group of persons defined as those who suffer violence because they refused to join criminal gangs "lacks the visibility and particularity required to constitute a social group" for purposes of 8 U.S.C. § 1101(a)(42)(A). Constanza v. Holder, 647 F.3d 749, 753-54 (8th Cir. 2011); see Matter of S-E-G-, 24 I. & N. Dec. at 585, 588, 590. Nor did petitioners present evidence that the gang violence they suffered was persecution on account of their political opinion. See INS v. Elias Zacarias, 502 U.S. 478, 481-84 (1992); Marroquin-Ochoma v. Holder, 574 F.3d 574, 578 (8th Cir. 2009); Matter of S-E-G-, 24 I. & N. Dec. at 588-89.

Because they did not satisfy the asylum requirements, petitioners have not met the higher burden of proof necessary for withholding of removal. See Marroquin-Ochoma, 574 F.3d at 579.

## II. Denial of the Motion To Reopen

Less than ninety days after the BIA dismissed their administrative appeal, petitioners moved to reopen the proceedings, represented by new counsel. See 8 C.F.R. § 1003.2(c)(1)-(2).[1] The motion alleged ineffective assistance by attorney Roy Petty in (i) causing them to miss opportunities for other relief; (ii) failing to file a brief to the BIA; (iii) failing to call Mari to testify at the removal hearing; and (iv) failing to make "numerous other arguments" in appealing the IJ's adverse decision.

---

[1]Petitioners also moved for reconsideration of the final order of removal. The BIA properly dismissed that motion as untimely. See 8 C.F.R. § 1003.2(b)(2).

The BIA, noting that petitioners' eligibility for relief was "speculative[] at best," denied the motion because petitioners "have not shown that they were prejudiced by their counsel's performance." We review the BIA's decision to deny a timely motion to reopen under a deferential abuse-of-discretion standard. Kucana v. Holder, 130 S. Ct. 827, 834 (2010). When the motion was premised on claims of ineffective assistance of counsel, we use the Board's leading decision in Matter of Lozada, 19 I. & N. Dec. 637 (BIA 1988), as a "substantive and procedural compass." Ochoa v. Holder, 604 F.3d 546, 548 n.1 (8th Cir. 2010), cert. denied, 131 S. Ct. 3058 (2011). Lozada required, *inter alia*, that petitioners inform former counsel Petty of the allegations they were making and provide him an opportunity to respond, and demonstrate that Petty's performance prejudiced the outcome of the removal proceedings. 19 I. & N. Dec. at 639-40.

(i) All three petitioners were minors when they came to the United States in 2004. Only Mari was still under the age of eighteen when the removal hearing concluded in June 2009. Gaspar entered the United States in 1995 and became a lawful permanent resident in 1999. He did not apply to become a naturalized citizen. Petitioners argued in the motion to reopen that attorney Petty was ineffective in not advising Gaspar to apply for naturalization while petitioners were under the age of eighteen because, if granted, citizenship would have made his minor children eligible for "automatic" citizenship. See 8 U.S.C. § 1431(a). In support, as required by Lozada, they submitted a letter response from Petty in which he claimed that he "repeatedly urged Gaspar to naturalize," and an affidavit from Gaspar averring that Petty "never told us that I could become a US citizen or that doing that would have saved my children's cases." In denying relief on this ground, the BIA explained:

> To be eligible for adjustment of status, a visa petition (Form I-130) must be filed by the lawful permanent resident or United States citizen relative, and an adjustment of status application (Form I-485) must be submitted. There is no evidence provided with the present motion showing that these documents have been filed. Regarding the

-4-

acquired citizenship claim, there is still no evidence proffered that the father has filed an application for naturalization (Form N-400).  See section 320 of the Act.  The respondents have not included applications for the relief sought, with supporting documents, as required by the regulations.  8 C.F.R. § 1003.2(c)(1).

This reasoning is consistent with the applicable statutes and regulations and with the BIA's decision in Lozada.  It also highlights the speculative nature of petitioners' contention.  Without these documents, the BIA had no concrete evidence that, if Gaspar had applied for naturalization, he would have satisfied its stringent requirements.  See, e.g., 8 C.F.R. § 316.2 (eligibility for naturalization).  There was also no showing that petitioners would have met the requirements of § 1431(a) or, alternatively, that they would have been eligible for adjustment of status in the removal proceedings.  See 8 U.S.C. § 1255(a), (c) (eligibility and exclusions).

On appeal, petitioners further argue that attorney Petty was ineffective for failing to advise Gaspar to file a Form I-130 visa petition based on his lawful permanent residence status.  Petitioners hypothesize that if Petty had done this in September 2005 when he began representing them, a visa number would have been available in December 2009, allowing for adjustment of status before the close of the reopening proceedings.  We decline to consider this speculative contention because it was not raised to the agency.

(ii)-(iv) Turning to the other alleged deficiencies in attorney Petty's performance, we have little difficulty concluding the BIA did not abuse its discretion in finding that petitioners failed to show that the requisite prejudice resulted from these deficiencies.[2]  Petty's failure to file a brief on appeal to the BIA, which his letter

---

[2]To show prejudice, the BIA ruled, petitioners "must show that there is a reasonable probability that, but for the alleged errors by counsel, the result of the case would have been different," correctly citing our prior decision in Obleshchenko v.

response admitted was a mistake, did not warrant a finding of prejudice because the BIA noted the mistake but then decided petitioners' appeal on the merits. Compare Singh v. Ashcroft, 367 F.3d 1182, 1189 (9th Cir. 2004), where the court concluded a similar mistake was prejudicial because the BIA dismissed the administrative appeal for failure to file the required brief. Failing to call petitioner Mari at the removal hearing did not warrant a finding of prejudice when petitioners did not show what additional evidence of persecution she could have provided. See 8 U.S.C. § 1229a(c)(7)(B); 8 C.F.R. § 1003.2(c)(1). The contention that Mari needed to testify because "there is no derivative asylum status for the sibling of an asylee," even if true, fails to establish prejudice because neither of Mari's siblings was held to be eligible for asylum relief.

Finally, the contention that Petty ignored additional arguments in appealing the IJ's adverse decision is of no significance given the BIA's well-supported conclusion that petitioners' evidence at the removal hearing "had not established that the harm was on account of a protected ground." Petitioners assert on appeal that this deficiency resulted from Petty's failure to develop testimony at the hearing establishing a "family-as-social-group" asylum claim. But the motion to reopen failed to proffer any such evidence, as the statute and regulations required. See id.

For the foregoing reasons, the BIA did not err in denying asylum and withholding-of-removal relief and acted well within its discretion in denying the motion to reopen. We deny the petitions for review.

———————————————

Ashcroft, 392 F.3d 970, 972 (8th Cir. 2004).