KELLY, Circuit Judge, dissenting.
 

 I agree that substantial evidence supports the agency's finding that Gomez-Rivera was not persecuted based on an imputed anti-gang political opinion. I respectfully dissent, however, because I believe the court-like the immigration judge and BIA before it-has overlooked evidence that would compel a reasonable adjudicator to conclude that Gomez-Rivera's membership in his father's nuclear family was "one central reason" the gangs persecuted him.
 
 See
 

 8 U.S.C. § 1252
 
 (b)(4)(B) (standard of review);
 
 Marroquin-Ochoma v. Holder
 
 ,
 
 574 F.3d 574
 
 , 577 (8th Cir. 2009) ("one central reason" standard) (quotation omitted).
 

 "To qualify for asylum, an alien must show that a protected ground 'was or will be at least
 
 one central reason
 
 for persecuting' " him.
 
 Garcia-Moctezuma v. Sessions
 
 ,
 
 879 F.3d 863
 
 , 867 (8th Cir. 2018) (quoting
 
 8 U.S.C. § 1158
 
 (b)(1)(B)(I) ). "Under the 'one central reason' nexus standard, a protected ground need not be the sole reason for persecution, but the protected ground cannot be 'incidental or tangential to the persecutor's motivation.' "
 

 Id.
 

 at 868 (citing
 
 In re J-B-N & S-M-
 
 ,
 
 24 I & N Dec. 208
 
 , 213 (BIA 2007) ). When an asylum-seeker claims that a persecutor had multiple motivations, only some of which are based on protected grounds, the immigration judge cannot merely attribute the persecution to a non-protected ground.
 
 Marroquin-Ochoma
 
 ,
 
 574 F.3d at 577
 
 . "Rather, it remains necessary to carefully examine the record to determine whether the evidence shows that the persecution also occurred on account of a protected ground."
 
 De Brenner v. Ashcroft
 
 ,
 
 388 F.3d 629
 
 , 636 (8th Cir. 2004).
 

 Here, Gomez-Rivera offered credible, unrebutted evidence that his relationship to his father was one central reason he was persecuted by members of MS-13. Gomez-Rivera's father was a police officer assigned to guard gang members and to transport them to prison. He wore his police uniform and drove his squad car when he visited Gomez-Rivera each week. Gomez-Rivera's father fled El Salvador in 2006, after a gang member approached him on the street and threatened to kill him.
 

 Members of the MS-13 gang started approaching Gomez-Rivera two to three times per week when he was just ten years old. They attempted to recruit him and also subjected him to violent harassment. On eight different occasions, they threatened to kill him if he did not join the gang. And, just a few months before Gomez-Rivera fled to the United States, a group of five gang members attacked him, hitting and kicking him. As the court observes, Gomez-Rivera testified that gang members also approached his friends two to three times per week. But, the gang members bothered him more than they did his friends, focusing their attention on him because his father was a police officer. When they harassed Gomez-Rivera, the gang members frequently called him "Gallo," a nickname he shares with his father, but they also referred to him as "
 
 the son
 
 of Gallo." The gang members knew Gomez-Rivera's
 father had detained them, and talked about his father when they were recruiting and threatening to kill Gomez-Rivera. They told him that "if [he] joined them, then [his] father would suffer because of that." The gang members also told Gomez-Rivera that "since [his father] was a police officer, they were going to use [Gomez-Rivera] ... to attract him, because they knew that [his father] had captured their friends." In other words, "they knew that if they got [Gomez-Rivera, his] father would go back for [him]."
 

 And University of Minnesota Professor Patrick McNamara testified that the gangs targeted Gomez-Rivera because of his father's gang-related duties as a police officer. In his view, while Salvadoran gangs have undertaken a broader effort to recruit young people, the gangs also specifically target members of police officers' families, making it "extremely dangerous for relatives of people ... in the police department." In sum, as Professor McNamara opined in his written report:
 

 While many other young boys in El Salvador have had to abandon their homes because of gang recruitment efforts, threats of violence, beatings, and attempted homicides, [Gomez-Rivera's] situation is significantly different and significantly more dangerous. Police officers and their families, particularly sons, are primary targets of all criminal organizations in El Salvador.
 

 I believe that this evidence, all of which the immigration judge found credible, would compel a reasonable adjudicator to conclude that Gomez-Rivera's membership in his father's nuclear family was "one central reason" for the persecution he faced from the gangs. Therefore, I would grant the petition.